**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **SMART STUDY CO., LTD,** | 19cv7725 (JGK) |
| | 19cv7726 (JGK) |
| **Plaintiff,** | 19cv7727 (JGK) |
| | 19cv7728 (JGK) |
| **- against -** | 19cv7729 (JGK) |
| **LIZHIWANGLUO16 et al.,** | <u>MEMORANDUM OPINION AND</u> <u>ORDER</u> |
| **Defendants.** | |

---

**JOHN G. KOELTL, District Judge:**

The plaintiff in these five related cases, Smart Study Co.,
Ltd., has moved for default judgments against the defaulting
defendants.[1] For the reasons stated below, the motions are
**granted** and the Court enters judgments in the five related
cases.

## I.

The complaints in these five related case alleged claims
against numerous defendants for counterfeiting of the
plaintiff's registered trademarks in violation of the Lanham
Act, 15 U.S.C. §§ 1114, 1116, and 1117; infringement of the
plaintiff's unregistered trademarks in violation of the Lanham
Act, 15 U.S.C. § 1125; false designation of origin, passing off,

---

[1] Various defendants originally named in these cases have been voluntarily
dismissed throughout the litigation pursuant to Federal Rule of Civil
Procedure 41(a)(1)(A)(i). In total, the Court enters default judgments today
against 20 defaulting defendants in case No. 19-cv-7725; 63 defaulting
defendants in case No. 19-cv-7726; 61 defaulting defendants in case No. 19-
cv-7727; 33 defaulting defendants in case No. 19-cv-7728; and 75 defaulting
defendants in case No. 19-cv-7729. The defaulting defendants are listed in
the Glossary of the judgments.

and unfair competition in violation of 15 U.S.C. § 1125(a);
copyright infringement of the plaintiff's registered copyrights
in violation of the Copyright Act of 1976, 17 U.S.C. § 501; and
unfair competition and unjust enrichment under state law, all
arising from the defendants' counterfeiting of the plaintiff's
Baby Shark trademarks and Baby Shark products. The plaintiff now
seeks statutory damages for the defaulting defendants'
counterfeiting of the plaintiff's registered marks under 15
U.S.C. § 1117(c) in the amount of $50,000 per defaulting
defendant; a permanent injunction against the defaulting
defendants' trademark infringement and counterfeiting under 15
U.S.C. § 1116, as well as against the defaulting defendants'
copyright infringement under 17 U.S.C. § 502(a); a post-judgment
asset restraint and restraint on transfer pursuant to Federal
Rules of Civil Procedure 64 and 65 and 15 U.S.C. § 1116(a); a
continuance of the pre-judgment asset restraint; and other
miscellaneous relief.

On March 11, 2020, the plaintiff obtained Clerk's
Certificates of Default against the defaulting defendants. No.
19-cv-7725, ECF No. 30; No. 19-cv-7726, ECF No. 34; No. 19-cv-
7727, ECF No. 36; No. 19-cv-7728, ECF No. 27; No. 19-cv-7729,
ECF No. 58. On April 27, 2020, the Court entered an order to
show cause why a default judgment should not be entered against
the defaulting defendants in the five related cases and the

Court set a date of May 6, 2020 for the defaulting defendants to respond or else default judgments would be entered against the defaulting defendants. No. 19-cv-7725, ECF No. 40; No. 19-cv-7726, ECF No. 43; No. 19-cv-7727, ECF No. 45; No. 19-cv-7728, ECF No. 45; No. 19-cv-7728, ECF No. 38; No. 19-cv-7729, ECF No. 65. The defaulting defendants have failed to appear in this case and have failed to respond to the order to show cause.

## II.

### A.

"Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of default, and the entry of a default judgment." Gold Medal Produce, Inc. v. KNJ Trading Inc., No. 19-cv-3023, 2020 WL 2747312, at *1 (S.D.N.Y. May 27, 2020). The first step "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011). Under Rule 55(a), a Clerk of the court is empowered to enter a default against a party that has not appeared. See New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The Clerk has entered such defaults against the defaulting defendants in the five related cases.

3

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." Mickalis Pawn Shop, 645 F.3d at 128. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); see also Gold Medal Produce, 2020 WL 2747312, at *1.

In determining whether to grant a motion for default judgment, the Court must consider "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, No. 07-cv-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (internal quotation marks omitted). All three factors favor the entry of a default judgment in these five related cases. The defendants' failures to respond to the complaints and to the motions for a default judgment indicate willful conduct. The Court is unaware of any meritorious defense that the defendants would have to the plaintiff's claims, and the plaintiff will be prejudiced without a default judgment because the plaintiff will have no other remedy.

4

**B.**

In light of the defendants' default in these cases, the Court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in the plaintiff's favor, but the Court must still determine whether the plaintiff's allegations establish the defaulting defendants' liability as a matter of law. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). The following facts are taken from the complaints and the declarations and exhibits filed by the plaintiff in these cases, which are incorporated by reference into the plaintiff's complaints.[2]

The plaintiff is a South Korean global entertainment company, which, among other things, produces songs and stories to provide learning experiences to children. Compl. ¶¶ 5-8. One of the plaintiff's most successful creations is the "Baby Shark" song and viral music video which has amassed nearly 3.1 billion views on YouTube. Id. at ¶ 8. The plaintiff has developed a worldwide licensing program for consumer products associated with its Baby Shark Marks and Baby Shark Products, which the plaintiff sells through online shops accessible through its PINKFONG website in various countries around the world,

---

[2] The Complaints, declarations, and exhibits filed in the five related case are substantially the same. Citations are to the filings in case No. 19-cv-7725.

including the United States, where the plaintiff sells its products through companies including Amazon, Walmart, and Target. Id. at ¶¶ 9-10.

The plaintiff is the owner of various United States Trademarks, both registered and unregistered, as well as various United States trademark applications. In particular, the plaintiff owns registered United States trademark No. 5,803,108 for "BABY SHARK" for a variety of goods in trademark class 28; trademark No. 5,483,744 for "PINKFONG" for a variety of goods in trademark classes 3 and 21; trademark No. 5,327,527 for "PINKFONG" for a variety of goods in trademark classes 9, 16, and 28; and trademark No. 4,993, 122 for "PINKFONG" for a variety of goods in trademark classes 9 and 25. Kang Decl. ¶ 11 & Ex. A. The plaintiff has also applied for registration of "BABY SHARK" with application number 79/253,035 for a variety of goods in trademark classes 9, 16, 25, and 41; for "PINKFONG BABY SHARK" with application number 88/046,099 for a variety of goods in trademark class 28; for "PINKFONG" with application number 79/252,869 for a variety of goods in trademark class 41; "PINKFONG BABY SHARK" with application number 79/249,403 for a variety of goods in trademark classes 21 and 24; and "PINKFONG BABY SHARK" with application number 88/396,786 for a variety of goods in trademark class 25. Id.

The plaintiff also owns registered United States copyrights. These copyrights include copyright No. VA 2-139-856 covering Baby Shark; No. 2-130-847 covering Daddy Shark; No. VA 2-130-854 covering Mommy Shark; No. VA 2-131-983 covering Pink Fong Mascot; No. SR 823-609 covering Baby Shark (Sound Recording and Music); No. PA 2-142-905 covering Baby Shark (Motion Picture); and a variety of common law copyrights. Kang Decl. ¶ 13 & Ex. B.

The defendants are individuals and business located in China, but doing business in the United States through user accounts and merchant storefronts on eBay and other similar online marketplaces, who offer for sale products that appear identical to the plaintiff's Baby Shark Marks and Baby Shark Products. Id. at ¶¶ 27-28, 31-33. The plaintiff alleges that the defendants' unlawful actions include "manufacturing importing, exporting advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers[.]" Id. at ¶ 33. The defendants are not authorized by the plaintiff to deal in the Baby Shark Products or use the Baby Shark Marks, and the defendants' counterfeit products are virtually indistinguishable from the plaintiffs' Baby Shark Products. Id. at ¶¶ 34-35, 38-40.

C.

After independently reviewing the allegations in the
complaint and the accompanying declarations and exhibits, it is
clear that the plaintiff is entitled to a default judgment as to
liability on all the claims brought in these related cases
against the defaulting defendants.

As an initial matter, the Court has personal jurisdiction
over the defaulting defendants.[3] In order to exercise personal
jurisdiction over a defendant, the court must look to whether
there is jurisdiction under the applicable statute and whether
the exercise of jurisdiction is consistent with due process. See
Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158,
165 (2d Cir. 2005). The law of the forum state, in these cases
N.Y. C.P.L.R. § 302(a)(1), applies to the first inquiry. New
York's personal jurisdiction statute permits jurisdiction over
non-domiciliaries, which all the defendants in these cases are,
who "in person or through an agent . . . transact[] any business
within the state" and if the "cause of action arise[es] from"
the defendants' conduct. N.Y. C.P.L.R. § 302(a); see also
Gerstle v. Nat'l Credit Adjusters, LLC, 76 F. Supp. 3d 503, 509-

---

[3] On a motion for a default judgment, a district court may, but is not
required to, investigate whether it has personal jurisdiction over a
defaulting defendant because in some circumstances a defaulting defendant may
have waived personal jurisdiction by virtue of the default. See Mickalis Pawn
Shop, 645 F.3d at 133-34. In any event, the Court has personal jurisdiction
over the defendants for the reasons explained in this opinion.

10 (S.D.N.Y. 2015). With respect to the due process analysis, jurisdiction over a non-domiciliary is proper where "1) the defendant has sufficient minimum contacts with the forum and 2) the assertion of personal jurisdiction is reasonable under the circumstances of the particular case." Gerstle, 76 F. Supp. 3d at 510 (quotation marks omitted).

The plaintiff's allegations are sufficient for this Court to exercise personal jurisdiction over the defaulting defendants. The defaulting defendants have transacted business within the state by virtue of the defaulting defendants' operation of online user accounts and merchant storefronts through which customers in New York can view and purchase the counterfeit products at issue in this case. The defaulting defendants' commercial reach into New York through their online marketplaces is attested to by the plaintiff's counsel own purchases of counterfeit products through the defaulting defendants' storefronts. See Arnaiz Decl. ¶¶ 8-10 & Ex. A; Scully Decl. ¶ 21 & Ex. B; Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 170 (2d Cir. 2010) ("[C]ourts have explained that section 302 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim

asserted.") (internal quotations marks omitted); Lifeguard
Licensing Corp. v. Ann Arbor T-Shirt Co., LLC, No. 15-cv-8459,
2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) ("Regularly
offering and selling goods via an online marketplace such as
Amazon.com can provide a basis for personal jurisdiction under
CPLR § 302(a), even though Defendants do not control their
Amazon.com 'storefront' or its interactivity to the same extent
that they control their own highly interactive website."). 
Further, the defaulting defendants' operations, which make the
counterfeit products available in New York, demonstrates that
there is an "articulable nexus or substantial relationship
between the business transaction and the claim asserted." Gucci
Am., Inc. v. Weixing Li, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015)
(emphasis and internal quotation marks omitted). The defaulting
defendants' acts of "selling counterfeit goods into New York
satisfied the long-arm statute under section 302(a)(1)." Chloe,
616 F.3d at 170.

      Because exercising personal jurisdiction over the
defendants in these cases complies with Section 302(a)(1), it
also comports with constitutional due process. See Energy Brands
Inc. v. Spiritual Brands Inc., 571 F. Supp. 2d 458, 469
(S.D.N.Y. 2008).

      The plaintiff's allegations establish the defaulting
defendants' liability for counterfeiting infringement of the

10

plaintiff's registered trademarks as a matter of law. There are two elements of a trademark infringement claim under the Lanham Act: "(1) the plaintiff's ownership of a valid trademark and (2) the likelihood of confusion from the defendants' use of the trademark without the plaintiff's permission." Coach, Inc v. O'Brien, No. 10-cv-6071, 2012 WL 1255276, at *12 (S.D.N.Y. Apr. 13, 2012). The plaintiff's valid registered trademarks, see Kang Decl. Ex. A, satisfy the first prong and the defendants' allegations that the defaulting defendants distributed counterfeit products bearing the plaintiff's well-known marks is sufficient to satisfy the second prong. See Coach, 2012 WL 1255276, at *12.[4]

Moreover, because the plaintiff's allegations establish the defaulting defendants' liability for trademark infringement, the allegations also establish the defaulting defendants' liability for false designation of origin, passing off, and unfair competition under the Lanham Act. See Richemont N. Am., Inc. v. Huang, No. 12-cv-4443, 2013 WL 5345814, at *5 n.15 (S.D.N.Y. Sept. 24, 2013).[5]

---

[4] The declarations of Brianne Scully and the attached exhibits depicting the defendants' products, filed in the five related cases, establish that the defaulting defendants have all engaged in the production and selling of counterfeiting products.

[5] Because the judgments in these cases, both with respect to damages and injunctive relief, are properly entered against the defaulting defendants under the federal Lanham Act and Copyright Act, for the reasons explained below, there is no need to determine whether the plaintiff's allegations establish the defaulting defendants' liability as to the state trademark

The plaintiff's allegations also establish that the defaulting defendants are liable for copyright infringement under the Copyright Act. A copyright plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Kwan v. Schlein, 634 F.3d 224, 229 (2d Cir. 2011) (quotation marks omitted). The plaintiff's certificates of registration for the Baby Shark Works, Kang Decl. Ex. B, are prima facie evidence of the plaintiff's valid ownership of the copyright as well as of the originality of the works. See Boisson v. Banian, Ltd., 273 F.3d 262, 268 (2d Cir. 2001). The allegations in the complaint along with the declarations and attached exhibits depicting the defendants' products are also sufficient for the Court to conclude that the defendants copied the plaintiff's works without permission by selling products that are virtually identical to the plaintiff's works. See Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 544 (S.D.N.Y. 2015). Because the plaintiff has sufficiently shown that it owns valid copyrights and that the defaulting defendants intentionally sold

claims in this case. In any event, it appears that the plaintiff's allegations are sufficient to establish liability for the state law unfair competition claim. Unfair competition under state law parallels unfair competition under the Lanham Act, except that the plaintiff must show either actual confusion or a likelihood of confusion as well as bad faith on the part of the defendants. See Richemont, 2013 WL 5345814, at *5 n.15. The defaulting defendants' counterfeiting in these cases establishes both actual confusion between the products of the plaintiff and the defaulting defendants' products as well as the bad faith on the part of the defendants.

infringing products substantially identical to the plaintiff's
Baby Shark products, the plaintiff has stated a valid federal
copyright infringement claim. See id.

Because the plaintiff's allegations are sufficient as a
matter of law to satisfy the trademark and copyright claims
brought in this action, default judgments are properly entered
against the defaulting defendants as to liability.

### III.

The entry of default judgment establishes the defaulting
defendants' liability in these cases based on the well-pleaded
allegations in the complaints, but the defaults are "not an
admission of damages." Mickalis, 645 F.3d at 128 (internal
quotation marks omitted). Following default, the court may not
simply rely on the plaintiff's determination of damages, but
"must instead conduct an inquiry in order to ascertain the
amount of damages with reasonable certainty." Credit Lyonnais
Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir.
1999). In these cases, the plaintiff's submissions are
sufficient to determine damages on the papers without an
evidentiary hearing. See Nemesis 2 LLC v. Salvati, No. 19-cv-
3373, 2020 WL 2306444, at *5 (S.D.N.Y. May 8, 2020).

The plaintiff seeks damages of $50,000 against each
defaulting defendant under the Lanham Act, 15 U.S.C. § 1117(c),
for trademark counterfeiting of the plaintiff's registered

13

marks.[6] Under the Lanham Act, the owner of a registered

trademark, which the plaintiff in these cases is as the owner of

the Baby Shark Marks, may elect, in lieu of actual damages and

profits, an award of statutory damages for the use of

counterfeit marks of "not less than $1,000 or more than $200,000

per counterfeit mark per type of goods or services sold, offered

for sale, or distributed, as the court considers just" or "if

the court finds that the use of the counterfeit mark was

willful, not more than $2,000,000 per counterfeit mark per type

of goods or services sold, offered for sale, or distributed, as

the court considers just." 15 U.S.C. § 1117(c).

Willfulness on the part of the defaulting defendants is

established in these cases. Willfulness is established "[b]y

virtue of the default[.]" Tiffany (NJ) Inc. v. Luban, 282 F.

Supp. 2d 123, 124 (S.D.N.Y. 2002); Coach, 2012 WL 1255276, at

*13. Willfulness is also established by the "apparent

similarity" between the defaulting defendants' products and the

---

[6] The plaintiff states that it elects to seek statutory damages solely under
the Lanham Act for counterfeiting of the plaintiff's trademarks, and not also
under the Copyright Act, without waiving any of its claims under the
Copyright Act. The Second Circuit Court of Appeals has not addressed the
issue whether an award of statutory damages under both the Lanham Act and the
Copyright Act would be duplicative when the unlawful conduct for both claims
is the same, although the weight of authority cautions against awarding
damages for both trademark infringement and copyright infringement for the
same infringed product. See Spin Master Ltd. v. Alan Yuan's Store, 325 F.
Supp. 3d 413, 425 (S.D.N.Y. 2018) (collecting cases). It is unnecessary to
address the issue of duplicative damages in this case because the plaintiff
seeks statutory damages only under the Lanham Act for counterfeiting of the
plaintiff's trademarks.

genuine plaintiff's marks, which is attested to by the
declarations and exhibits submitted by the plaintiff in
connection with these cases. See Coach, 2012 WL 1255276, at *13.

Where defendants have engaged in willful counterfeiting of
the plaintiff's marks, the Court looks to the following factors,
borrowed from cases under the Copyright Act, to determine the
"just" amount of statutory damages for the defaulting
defendants' willful infringement:

> (1) the expenses saved and the profits reaped; (2) the
> revenues lost by the plaintiff; (3) the value of the
> copyright or, by analogy, trademark; (4) the deterrent
> effect on others besides the defendant; (5) whether
> the defendant's conduct was innocent or willful; (6)
> whether a defendant has cooperated in providing
> particular records from which to assess the value of
> the infringing material produced; and (7) the
> potential for discouraging the defendant.

Id. (quotation marks omitted).

The defendants' failure to appear in these cases weighs in
favor of a heightened award of statutory damages under the sixth
factor. Moreover, the fact that the defaulting defendants in
these cases operate on web platforms to distribute and sell the
counterfeiting products supports "an inference of a broad scope
of operations" and thus heightened statutory damages are
appropriate under the first and second factors despite the lack
of specific evidence attesting to actual damages suffered by the
plaintiff in lost revenue or profits reaped by the defaulting
defendants. See AW Licensing, LLC v. Bao, No. 15-cv-1373, 2016

15

WL 4137453, at *3 (S.D.N.Y. Aug. 2, 2016). With respect to the third factor, the Baby Shark Marks have worldwide recognition and the plaintiff has expended significant efforts to build and maintain a respected global brand known for high-quality products. Kang Decl. ¶¶ 14-18. The remaining factors further support a heightened award of statutory damages where, as in these cases, the defaulting defendants have acted willfully and therefore the statutory damages should incorporate a "punitive component to discourage further wrongdoing by the defendants and others." Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009).

Given the application of the above factors in these cases, and the fact that the Lanham Act provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed," statutory damages of $50,000 against each defaulting defendant is "just" within the meaning of 15 U.S.C. § 1117(c). This amount of statutory damages is consistent with awards in other similar cases for willful counterfeiting of trademarks. See, e.g., All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd., 775 F. Supp. 2d 613, 625 (S.D.N.Y. 2011) (collecting cases establishing that $25,000-$50,000 in statutory damages per mark, which is well below the statutory maximum, is appropriate where there is no information about the defendants' earnings or the plaintiff's

16

losses). Therefore, an award of statutory damages of $50,000 per defaulting defendant under the Lanham Act is "just" and is sufficient to compensate the plaintiff and deter the defendants and others from engaging in unlawful counterfeiting.[7]

The judgments also provide for permanent injunctions against the defaulting defendants. The permanent injunctions against the defaulting defendants are substantially the same as the preliminary injunctions properly entered previously in these cases. See No. 19-cv-7725, ECF No. 18; No. 19-cv-7726, ECF No. 5; No. 19-cv-7727, ECF No. 5; No. 19-cv-7728, ECF No. 5; No. 19-cv-7729, ECF No. 5.

An injunction on a motion for default judgment is appropriate if the plaintiff can show that "(1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." CommScope, Inc. of N. Carolina v. Commscope (U.S.A.) Int'l Grp. Co., Ltd., 809 F. Supp. 2d 33, 41 (N.D.N.Y. 2011) (internal quotation marks omitted).

With respect to the first prong, the permanent injunctions to enjoin a variety of unlawful behaviors under the Lanham Act

---

[7] The plaintiff also seeks post-judgment interest on the damages award, which the Court will award to the plaintiff in these cases pursuant to 28 U.S.C. § 1961, as reflected in the judgments. See Spin Master, Ltd. v. 13385184960@163.com, No. 18-cv-10524, 2020 WL 2614766, at *5 (S.D.N.Y. May 22, 2020) (awarding post-judgment interest in a copyright and trademark infringement case).

are authorized by the Lanham Act. <u>See</u> 15 U.S.C. § 1116(a) ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."); <u>Harris v. Fairweather</u>, No. 11-cv-2152, 2012 WL 3956801, at *10 (S.D.N.Y. Sept. 10, 2012) (entering a final injunction under the Lanham Act following entry of a default judgment), <u>report and recommendation adopted</u>, 2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012).

A party seeking an injunction must demonstrate actual success on the merits, irreparable harm, the lack of an adequate remedy at law, that the balance of hardships between the plaintiff and the defendants favor the plaintiff, and that the public interest would not be disserved by a permanent injunction. <u>See</u> <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006); <u>Coach</u>, 2012 WL 1255276, at *17. Actual success is established in these cases as a result of the defendants' default. <u>See</u> <u>CommScope</u>, 809 F. Supp. 2d at 41. Irreparable harm is satisfied in a trademark infringement case where there is a likelihood that ordinary purchasers will be misled or confused

about the source of the goods in question, which is established
in these cases because the plaintiff's allegations, accepted as
true, demonstrate likelihood of confusion between the
plaintiff's products and the defaulting defendants' counterfeit
products. See id. (collecting cases). The plaintiff's papers in
support of the permanent injunction also demonstrate that the
defendants' counterfeiting is willful and will continue unless
the defendants are restrained by a permanent injunction and that
absent an injunction of the defendants' various behaviors
relating to counterfeiting, the plaintiff's marks will continue
to be infringed, which is also demonstrated by the defaulting
defendants' failure to appear in these cases. The plaintiff
therefore lacks an adequate remedy at law absent a permanent
injunction. The final two factors favor the injunction because
the plaintiff will continue to suffer irreparable harm and the
public has an interest in not being deceived and being assured
that marks are of known quality and origin. See New York City
Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp 2d 305,
344 (S.D.N.Y. 2010).

    The specific provisions of the injunctions provided for in
the judgments enjoin a variety of activities that are necessary
to enjoin continued infringement of the plaintiff's Baby Shark
Marks as well as continued false designation of origin. These
specific provisions are appropriate under the Lanham Act and

19

consistent with the latitude district courts have to craft equitable relief under the Lanham Act. See Harris, 2012 WL 3956801, at *10; Coach, 2012 WL 1255276, at *18-19 (describing a detailed injunction issued in a trademark infringement case enjoining a variety of actions).

The injunctions also prevent a variety of activities by the defendants in connection with the plaintiff's copyrights. Injunctions are appropriate under the Copyright Act, 17 U.S.C. § 502(a), which provides that courts may "grant temporary and final injunctions on such terms as [they] may deem reasonable to prevent or restrain infringement of a copyright." See Salinger v. Colting, 607 F.3d 68, 75-76, 77 (2d Cir. 2010). For substantially the same reasons that permanent injunctions are appropriate in these cases to enjoin further violations of the Lanham Act, the permanent injunctions provided for in the judgments are "reasonable to prevent or restrain infringement" of the plaintiff's copyrights in the Baby Shark Works. See Hounddog Prods., L.L.C. v. Empire Film Grp., Inc., 826 F. Supp. 2d 619, 632-33 (S.D.N.Y. 2011) (entering a permanent injunction to enjoin copyright infringement because, among other reasons, "[t]he Court also infers from [the defendant's] default that it is willing to continue its infringement.").

The provisions of the judgments concerning the continuance of the current asset restraint as well as post-judgment asset

restraints are appropriate in these cases under Federal Rules of Civil Procedure 64 and 65, 15 U.S.C. § 1116(a), this Court's inherent equitable powers, and for reasons already set out in previous orders in these cases. See Spin Master, Ltd, 2020 WL 2614766, at *5 (finding such relief appropriate following default in a copyright and trademark infringement case).

The remaining provisions of the judgments concerning the continued authorization of service by electronic means and other miscellaneous relief are also appropriate in order to effectuate the judgments in these cases.

<b>CONCLUSION</b>

For the foregoing reasons, the Clerk is directed to enter judgment in these cases in favor of the plaintiff and against the defaulting defendants as reflected in the judgments signed simultaneously with this memorandum opinion and order. The plaintiff shall serve this memorandum opinion and order on the defaulting defendants and file proof of service on the respective dockets by **July 17, 2020**. The Clerk is also directed to close all pending motions and to close these cases.

**SO ORDERED.**

Dated:   New York, New York
         July 3, 2020                    _  /s/ John G. Koeltl_____
                                              John G. Koeltl
                                     United States District Judge